UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ERICK COCHRAN,

                         Petitioner,

        -against-                                          9:18-CV-0175 (LEK/TWD)

THOMAS GRIFFIN,

                         Respondent.

_____

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

Erick Cochran, a New York State prisoner proceeding pro se, filed a petition for a writ of

habeas corpus with this Court pursuant to 28 U.S.C. § 2254. Dkt. Nos. 1 ("Petition"), 1-1

("Cochran Affidavit"), 1-3 ("Cochran Exhibits"). Respondent has answered the Petition, and

Petitioner has replied. Dkt. Nos. 19 ("Answer"), 20 ("Respondent's Memorandum of Law" or

"R. Mem."), 22, 22-1, 22-2 ("State Court Records" or "SCR"), 22-3 ("Trial Transcripts/Exhibits"

or "TR/EX"), 24 ("Traverse").[1]

## II.     BACKGROUND

Between April and September 2010, the New York State Attorney General's Organized

Crime Task Force ("OCTF") and the Albany Police Department conducted a wiretap and

surveillance investigation of narcotics trafficking by the Bloods gang in and around Albany

County. TR/EX at 4056. At the conclusion of the investigation, an Albany County grand jury

---

[1]  The cited page numbers for the Petition, Cochran Affidavit, Cochran Exhibits,
Respondent's Memorandum of Law, and Traverse refer to those generated by the Court's
electronic filing system. When citing to the State Court Records and Trial Transcripts/Exhibits,
the Court refers to those documents' original pagination.

handed down a 195-count indictment, charging Petitioner, co-defendant Ronald Wright, and thirty-nine others with the commission of various drug-related crimes. SCR at 3005–3157, 3158–3166.

Petitioner was charged with thirty-nine felonies, including one count of enterprise corruption (a class B felony, N.Y. Penal Law § 460.20(1)(a)), based on his association with and participation in the "Bloods Drug Distribution Enterprise." SCR at 3004–05. The indictment alleged thirty-eight pattern criminal acts committed by Petitioner, with each pattern act also charged as a stand-alone felony offense. Id.

On March 1, 2011, Petitioner entered a plea of not guilty. SCR at 3171. On April 22, 2011, Petitioner was presented with a plea and cooperation agreement: he could satisfy the indictment by pleading guilty to enterprise corruption in exchange for an indeterminate prison sentence of eight to sixteen years and his cooperation in the People's prosecution of Wright.[2] SCR at 3175–77. Petitioner's counsel stated on the record that she had "sufficient opportunity" to discuss the offer with Petitioner. She further stated they had listened to "hours" of intercepted calls that the People would present at trial and had "discussed [the offer] at length." Petitioner did not disagree with these statements, but he rejected the offer. SCR at 3176–77.

Petitioner was tried jointly with Wright before the Honorable Thomas A. Breslin in Albany County Court from May 23, 2011, through June 7, 2011. TR/EX at 3325–4960. The prosecution presented testimony from fifteen witnesses, including primary witness Dennis Guiry, an Investigator with the OCTF, along with several other members of the OCTF and Albany City Police Department's Community Response Unit, and Kathryn Botting, a forensic scientist of the

---

[2] Wright was charged with twenty-eight felonies, including enterprise corruption, attempted murder in the second degree, conspiracy, and criminal sale of controlled substances. SCR at 3165.

New York State Police Forensic Investigation Center in Albany. Four lay witnesses testified pursuant to cooperation agreements: Benjamin Brook and Jason Lance, two of Petitioner's heroin customers, Rachel Gagliardi, his girlfriend, and Ashlie Hudson, an acquaintance. Petitioner did not call any witnesses, nor did he testify on his own behalf. TR/EX at 4625.

Through Guiry, the prosecution introduced approximately 200 intercepted telephone and text conversations. Guiry testified about the purpose, structure, and hierarchy of the Bloods gang, the business of narcotics trafficking, and the investigation. He also interpreted many of the intercepted telephone calls and text messages admitted into evidence. Other police witnesses testified about the surveillance of some of the heroin sales, seizure of heroin from Petitioner's residence and from Brook, and the shooting of Myles Jackson, a Bloods gang member suspected of being an informant.

At the close of the prosecution's case, the trial court dismissed the fourth-degree conspiracy count. At the conclusion of the trial, the jury found Petitioner guilty of enterprise corruption, second-degree conspiracy, a second-degree drug sale, thirty-one third-degree drug sales, two third-degree drug possessions, and one attempted third-degree drug possession. The jury acquitted him of two third-degree drug sales. SCR at 4902–52; TR/EX at 1831-35.[3] On July 5, 2011, the trial court sentenced Petitioner to a five-year determinate prison term for each drug sale or possession, an eight-and-1/3-to-twenty-five year indeterminate prison term for enterprise corruption, and the same indeterminate prison term for second-degree conspiracy. SCR at 4962–70. The trial court imposed thirty-two of the drug sale or possession sentences to run

---

[3] Wright was acquitted of second-degree attempted murder but was convicted of enterprise corruption and most of the other charged felonies. SCR at 4902–52; TR/EX 1831–35.

consecutively. Petitioner's resulting aggregate sentence of 160 years was capped at thirty years pursuant to N.Y. Penal Law § 70.30(1)(e).

Through new appellate counsel, Petitioner appealed his conviction, arguing that: (1) he was denied a fair trial due to the prosecution's improper use of "prior bad acts" in its direct case; (2) trial counsel was ineffective for failing to make a pretrial motion to suppress the fruits of an illegal wiretap; (3) the evidence presented at trial was legally insufficient; (4) the jury's verdict was against the weight of the evidence; and (5) the sentence imposed was harsh and excessive. SCR at 2570–2609. The Appellate Division of the New York Supreme Court modified Petitioner's judgment by reversing his conviction of second-degree conspiracy and vacating the sentence imposed with respect to that count, and, as modified, affirmed the judgment against Petitioner in a reasoned decision issued on June 2, 2016. People v. Cochran, 140 A.D.3d 1198 (N.Y. App. Div. 3rd Dep't 2016). Petitioner filed a counseled application for leave to appeal, which the New York Court of Appeals summarily denied on September 26, 2016. SCR at 5308–10; People v. Cochran, 66 N.E.3d 3 (N.Y. 2016).

On January 20, 2015, while his direct appeal was pending, Petitioner, proceeding pro se, moved pursuant to New York Criminal Procedural Law ("CPL") §440.10 to vacate the judgment of conviction on grounds that the indictment was invalid. SCR at 1–14. The county court denied the motion in its entirety in a reasoned unpublished opinion issued on February 19, 2015. SCR at 23–26.

On June 23, 2017, Petitioner, proceeding pro se, moved pursuant to CPL § 440.10 to vacate the judgment of conviction on the ground that trial counsel was ineffective for never informing him that he could receive up to thirty years' imprisonment if convicted at trial. SCR at 5314–32. This omission, according to Petitioner, caused him to reject the prosecution's plea

offer. In an accompanying affidavit, Petitioner declared: "If I knew that I could potentially end up with a sentence of 30 years, I would not have risked going to trial, I would definitely had accepted the 8 to 16 years plea deal." SCR at 5332. The county court denied the motion in its entirety in a reasoned, unpublished opinion issued on November 15, 2017. SCR at 5488–93. Petitioner filed a motion for leave to appeal, which the Third Department summarily denied. SCR at 5497–5518.

On February 12, 2018, Petitioner filed the instant pro se Petition before this Court.[4] Petitioner raises the following grounds for habeas relief: (1) trial counsel was ineffective for (a) not informing him of his sentencing exposure, thus causing him to reject a favorable plea, (b) not moving to suppress wiretap evidence, and (c) not challenging the identification of his voice in the intercepted telephone calls admitted at trial; (2) the prosecution's improper use of prior convictions and bad acts of Petitioner, Wright, and conspirators deprived Petitioner of a fair trial; and (3) the trial evidence was legally insufficient. Pet. at 3, 5–10; Cochran Affidavit at 1–4.

## III.   LEGAL STANDARD

### A.  Exhaustion of State Court Remedies

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state courts. See Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991) ("Under 28 U.S.C. § 2254(b), applicants for habeas corpus relief must exhaust[ ] the remedies available in the courts of the State.") (internal quotation marks omitted). "The

---

[4]  In October 2017, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as well as exhibits, an application to proceed in forma pauperis, and a letter motion to stay the petition. See Cochran v. Griffin, No. 17-CV-1103, Dkt. Nos, 1, 2, 3. On October 12, 2017, the Court ordered, among other things, that the petition be dismissed without prejudice for failure to exhaust state court remedies because the § 440.10 motion, filed June 23, 2017, was still pending. Id., Dkt. No. 4; see also Pet. at 12.

exhaustion requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir. 2006) (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)).

Proper exhaustion has both a procedural and a substantive component. Trimm v. Sheahan, No. 14-CV-905, 2014 WL 3670723, at *1 (N.D.N.Y. July 23, 2014). Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in a federal habeas corpus petition. Rose, 455 U.S. at 520. Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations omitted); see also Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 808 (2d Cir. 2000). In other words, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Unexhausted claims are generally barred from habeas review by the rules concerning procedural default. Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)).

**B. Procedural Default**

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and that actual prejudice results, or that the denial of habeas relief would result in a fundamental miscarriage of justice. House v. Bell, 547 U.S. 518, 536–39 (2006); Schlup v. Delo, 513 U.S. 298, 327 (1995). To meet the "cause" requirement, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. Maples v. Thomas, 565 U.S. 266, 280 (2012); Coleman, 501 U.S. at 753.

6

Prejudice requires a petitioner to show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986) (quoting United States v. Frady, 456 U.S. 154, 170 (1982)).

Additionally, there is an exception to the procedural bar in cases where a petitioner can prove actual innocence. McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) ("[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief."). "[A]ctual innocence means factual innocence, not mere legal insufficiency." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (quoting Bousley v. United States, 523 U.S. 614, 623 (1998)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324; see also Whitley v. Senkowski, 317 F.3d 223, 225 (2d Cir. 2003). In addition, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House, 547 U.S. at 536–37 (quoting Schlup, 513 U.S. at 327); see also Doe v. Menafee, 391 F.3d 147, 160–62 (2d Cir. 2004).

### C.  Standard of Review of State Court Decisions

Assuming a petitioner can successfully navigate his or her claims through the maze of rules governing exhaustion and procedural default, those claims are reviewed under the standard laid out in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254(d). Under AEDPA, a federal court may grant habeas relief with respect to a charge

adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. § 2254(d)(1)-(2); see also Cullen v. Pinholster, 563 U.S. 170, 180–81, 185 (2011). This "highly deferential" standard "demands that state-court decisions be given the benefit of the doubt." Felkner v. Jackson, 562 U.S. 594, 598 (2011) (quoting Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)). In other words, "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" Nevada v. Jackson, 569 U.S. 505, 508–09 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)).

Additionally, federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007) (quoting § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." Lewis v. Conn. Comm'r of Corr., 790 F.3d 109, 121 (2d Cir. 2015).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991); Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it.

See Dolphy v. Mantello, 552 F.3d 236, 239–40 (2d Cir. 2009) (citing Spears v. Greiner, 459 F.3d 200, 203 (2d Cir. 2006)); cf. Wiggins v. Smith, 539 U.S. 510, 530–31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes the state court decided the claim on the merits and the that decision rested on federal grounds. See Coleman, 501 U.S. at 740; Harris v. Reed, 489 U.S. 255, 263 (1989); see also Jimenez, 458 F.3d at 140 (2d Cir. 2006) (explaining the Harris-Coleman interplay); Fama, 235 F.3d at 810–11 (same).

## IV.   DISCUSSION

### A.   Ineffective Assistance of Counsel

Petitioner raises a variety of claims asserting the ineffectiveness of trial counsel. To demonstrate ineffective assistance of counsel under Strickland v. Washington, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. "It is the accused's 'heavy burden' to demonstrate a constitutional violation under *Strickland*." Moreno v. Smith, No. 06-CV-4602, 2010 WL 2975762, at *15 (E.D.N.Y. July 26, 2010) (quoting United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004)). Thus, Petitioner must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. See Hill v. Lockhart, 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the Strickland prongs. See Strickland, 466 U.S. at 697 (courts may consider either prong of the test first and need not

address both prongs if the defendant fails on one). Further, when ineffective assistance claims are considered under AEDPA, the reviewing court affords a "doubly" deferential standard regarding the state court opinion. Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, when § 2254(d) applies, "[t]he pivotal question" for the federal habeas court "is whether the state court's application of the *Strickland* standard was unreasonable." Richter, 562 U.S. at 101.

> 1. *Sentencing Exposure*

Petitioner first faults trial counsel for not informing him of his sentencing exposure, resulting in his rejection of a favorable pretrial plea and cooperation offer. Pet. at 3. Petitioner raised this claim in his second § 440 motion, which was denied. SCR at 5314–52. Respondent argues the county court rejected Petitioner's claim on procedural grounds and on the merits and, therefore, AEDPA applies. R. Mem. at 34–39. Respondent contends habeas relief is not warranted because the county court reasonably rejected Petitioner's claim that trial counsel was ineffective for not advising him of his sentence exposure. Id.

Upon review, and contrary to Respondent's assertion, the Court finds the county court did not adjudicate Petitioner's ineffective assistance of counsel claim relating to his sentencing exposure on the merits. Prior to addressing the merits of Petitioner's motion to vacate, the county court stated, "[e]ven if this court were to consider the motion, it would be denied on the merits[,]" and only after presumptively disposing of Petitioner's claim as procedurally barred under CPL § 440.10(3)(c). SCR at 5511. ("The motion is denied inasmuch as the defendant previously made a postjudgment motion seeking to vacate the conviction and he could have raised this ground but he failed to do so (see CPL 440.10[3][c]). Nothing would have prevented defendant from raising this issue at an earlier time."). Id.

The Second Circuit has stated that where a discussion of the merits is "preceded by a contrary-to-fact construction," such a "contingent observation" does not constitute an "adjudication on the merits." Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007); accord Fulton v. Graham, 802 F.3d 257, 265 (2d Cir. 2015) (finding the state court's discussion of ineffective assistance claim, introduced by noting that "*if* this court *were* to consider the defendant's claim of ineffective assistance of counsel, the motion *would* similarly be denied" signaled that the court "was *not* basing its judgment on the merits of the federal claim, but rather on a state procedural bar") (emphasis in original); cf. Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (noting that "adjudicated on the merits" means "a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground").

Here, inasmuch as the county court "explicitly invoke[d] a state procedural bar rule as a separate basis for decision," Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (quoting Harris, 489 U.S. at 264), and addressed the merits of the ineffective assistance of counsel claim as a counterfactual matter, the decision was not an "adjudication on the merits" for AEDPA purposes. Accordingly, the Court reviews Petitioner's ineffective assistance of counsel related to his sentencing exposure de novo. See Dolphy, 552 F.3d at 238 ("If the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'") (quoting Spears, 459 F.3d at 203).

The two-part Strickland test applies to the plea-bargaining process, and criminal defendants are entitled to the effective assistance of competent counsel during plea negotiations. Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (citations omitted). "[A]s a general rule, defense

11

counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012). This duty extends to providing professional advice on whether to accept or decline an offer and the resulting consequences. See Purdy v. United States, 208 F.3d 41, 45 (2d Cir. 2000) ("As part of this advice, counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed.") (internal citations omitted); Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999). The ultimate decision whether to plead guilty, however, lies with the defendant. Purdy, 208 F.3d at 45.

In the context of a rejected plea offer, prejudice means a reasonable probability that, but for counsel's deficient advice, the petitioner, the prosecution, and the court would have accepted the plea offer. Lafler, 566 U.S. at 163–64. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. To make this showing, "[Second Circuit] precedent requires some objective evidence other than defendant's assertions to establish prejudice." Pham v. United States, 317 F.3d at 178, 182 (2d Cir. 2003) (citing United States v. Gordon, 156 F.3d 376, 388-81 (2d Cir. 1998)).

Here, the plea offer was discussed on the record and counsel stated she "discussed [the offer] at length": he could satisfy the indictment by pleading guilty to enterprise corruption in exchange for an indeterminate prison sentence of eight to sixteen years and his cooperation in the People's prosecution of Wright. SCR at 3175–76. Petitioner did not object to counsel's representation regarding the plea offer, and he rejected the offer. SCR at 3176. Petitioner asserts, however, that he rejected the opportunity to plead guilty to enterprise corruption and receive a

sentence of eight to sixteen years because counsel failed to warn him that he could spend up to thirty years in prison if convicted at trial. Thus, he was "totally shocked" when the Court imposed a thirty-year sentence.

Even assuming, without deciding, that counsel's performance is treated as deficient to meet the first prong, Petitioner fails to establish that it caused him prejudice. To satisfy the prejudice prong of the Strickland test in the context of plea negotiations, Petitioner must show that, but-for counsel's errors, he would have pled differently. See United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005). The issue of whether a defendant would have accepted a plea agreement absent ineffective assistance of counsel is a factual determination. See Herzog v. United States, 38 F. App'x 672, 675 n.2 (2d Cir. 2002) (summary order); Purdy v. United States, 208 F.3d 41, 49 (2d Cir. 2000). The Second Circuit has determined that a petitioner's "self-serving post-conviction statement" that he would have pled differently had he been properly counseled is not usually enough to meet this test. See Gordon, 156 F.3d at 381. There must be some other "objective evidence," that he likely would have pled differently. Id. This can be determined, for example, by a great disparity between the actual sentence exposure and the maximum sentence exposure the petitioner would have had if he had been properly advised. Id.

Here, while Petitioner claims the "great difference" between the negotiated sentence of eight to sixteen years and his actual sentence of thirty years corroborates his allegation that he would have accepted the offer, the "disparity" argument omits that the negotiated sentence was contingent upon his cooperation against Wright. Petitioner's claim that had counsel advised him of his sentence exposure, he would not have rejected the plea is belied by the record. On his direct appeal, represented by new counsel, Petitioner argued:

> The People offered a plea bargain that included a sentence of eight
> to sixteen years in state prison in exchange for a guilty plea to

13

> Enterprise Corruption and cooperation against his codefendant, Ronald Wright—a co-defendant who was on trial for the attempted murder of a man who was rumored to have cooperated with the police.
>
> The plea bargain placed the defendant in an impossible position as his cooperation was tantamount to a death sentence. No rational actor would have accepted such a plea bargain.

SCR at 2608 (internal record citation omitted). Thus, by his own account, Petitioner expressed no interest in accepting a plea that required cooperating against Wright. This conclusion is reinforced by the timing of Petitioner's second § 440.10 motion.[5] Six years after Petitioner's judgment, but only eleven days after Wright's conviction became final,[6] Petitioner moved to vacate his conviction, seeking to obtain all of the benefits of the People's pretrial cooperation offer, but without actually cooperating. Moreover, Petitioner did not submit an affirmation from trial counsel to the county court to corroborate his allegation of deficient advice. He offers no evidence, beyond his own post hoc conclusory assertions, that but-for counsel's omission, he would have pled differently.

---

[5] In a letter to the trial court, and then orally in Petitioner's presence at his sentencing, the People recommend an aggregate determinate sentence of 30 years' imprisonment. SCR at 4962–69, 5445–53. On January 2015, while his direct appeal was pending, Petitioner filed a pro se motion to vacate his conviction on the ground that the indictment was jurisdictionally defective; but Petitioner did not mention counsel was ineffective for allowing him to reject the pretrial plea offer without discussing his sentencing exposure. SCR at 1–14. Nor did Petitioner object or express any surprise even when he was given the opportunity to speak on his own behalf at sentencing. See, e.g., Adorno v. United States, No. 98-CV-3366, 2005 WL 946619 (E.D.N.Y. Apr. 18, 2005) (denying ineffective assistance of counsel despite counsel miscalculations where it was clear that petitioner was aware of the actual sentence before he was sentenced and failed to object). This fact undermines Petitioner's present claim that counsel misrepresented his sentencing exposure.

[6] The Court of Appeals denied Wright's renewed leave application on June 12, 2017. People v. Wright, 29 N.Y.3d 1089 (N.Y. 2017).

Accordingly, under de novo review, Petitioner's claim regarding his trial counsel's alleged failure to inform him of his sentencing exposure fails because Petitioner cannot show that, but for counsel's omission, he would have accepted the plea *and* cooperation offer instead of going to trial. Petitioner's request for habeas relief on this ground is denied.

### 2.  Wiretap Evidence

Petitioner next claims he was denied effective assistance due to trial "counsel's failure to make a pretrial motion to suppress the fruits of an illegal wiretap deprived Petitioner of Due Process." Pet. at 5. Respondent concedes this claim was raised, in federal constitutional terms, by citing the Sixth Amendment and <u>Strickland</u>, in Petitioner's direct appeal to the Appellate Division. R. Mem. at 35–36; SCR at 2597–98, 5073–74.[7] However, Respondent argues the claim is unexhausted because in his application for leave to appeal, Petitioner did not identify a federal-law basis for his wiretap claim and, therefore, the claim is procedurally barred. R. Mem. at 39–41 (citing <u>Aparicio</u>, 269 F.3d at 91).

In the counseled leave application, Petitioner presented this claim as follows: "In the case at hand, it is respectfully submitted that [Petitioner] was denied his constitutional right to the effective assistance of counsel when his attorney failed to make a pretrial motion to suppress the fruits of an unlawful eavesdropping warrant. There was no strategic or other legitimate explanation for counsel's failure to request a hearing in regards to the wiretap of [Petitioner's] cellphone." SCR at 5309. Respondent correctly notes Petitioner did not cite any federal law, cite any state case law relying on the federal ineffective assistance standard, or label the claim

---

[7]  Respondent reads Petitioner's current ineffective assistance claim, as does the Court, as a reiteration of his Appellate Division federal claim that trial counsel was ineffective for not challenging the probable cause and necessity showings supporting a July 1, 2010, wiretap that warranted the authorized interception of his cellphone over the dates he engaged in the charged heroin transactions. R. Mem. at 35; SCR 2597–2600.

"federal." See Baldwin v. Reese, 541 U.S. 27, 32 (2004). Nor did petitioner convey the federal

nature of his claim by enclosing the entire Appellate Division record (thousands of pages) "for

[the Court of Appeals'] records and review." See Diguglielmo v. Senkowski, 42 F. App'x 492,

495–96 (2d Cir. 2002) (finding default where the petitioner conveyed the federal nature of his

claim in his Appellate Division brief, but not in his leave application); Jordan v. Lefevre, 206

F.3d 196, 199 (2d Cir. 2000) ("Counsel may not transfer to the state courts the duty to comb

through an applicant's appellate brief to seek and find arguments not expressly pointed out in the

application for leave.").

A state court is afforded a "fair opportunity" to rule on a federal claim when "the nature

or presentation of the claim [was] likely to alert the court to the claim's federal nature." Daye v.

Attorney General, 696 F.2d 186, 192 (2d Cir. 1982). Of course, citing a specific constitutional

provision will alert the state court to the constitutional nature of a claim. Jones v. Vacco, 126

F.3d 408, 413-14 (2d Cir. 1997); Baldwin, 541 U.S. at 32 ("A litigant wishing to raise a federal

issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for

example, by citing in conjunction with the claim the federal source of law on which he relies or a

case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'").

While such specificity is sufficient, it is not necessary; the Second Circuit has identified

"other ways in which a petitioner may alert the state court to the constitutional nature of a claim

without referring chapter and verse to the U.S. Constitution[.]" Ramirez v. Attorney Gen. of

State of New York, 280 F.3d 87, 95 (2d Cir. 2001). These "other ways" are: "(a) reliance on

pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing

constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to

call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts

that is well within the mainstream of constitutional litigation." Id. (quoting Daye, 696 F.2d at

194).

Here, even assuming, without deciding, that Petitioner's reference to the "constitutional

right to the effective assistance of counsel" sufficiently "call[ed] to mind" a Sixth Amendment

ineffective assistance of counsel claim, Daye, 696 F.2d at 194, and therefore is exhausted and not

procedurally barred, his argument fails on the merits.[8]

Here, the Appellate Division's denial of Petitioner's claim was not contrary to, nor an

unreasonable application of, Strickland. The Appellate Division found:

> Defendant's contention that his trial counsel was ineffective for
> failing to move to suppress the fruits of the eavesdropping warrant
> – i.e., the recordings of the cellular telephone calls at the heart of the
> People's proof – is foreclosed by our holding in People v Wright
> [139 A.D.3d 1094, 1101 (2017)], where we rejected an identical
> argument advanced by Wright regarding his own counsel's
> purported ineffectiveness.

SCR at 5306 (unaltered text). In turn, the Appellate Division concluded that Wright:

> was not deprived of the effective assistance of counsel by the failure
> of [trial counsel] to challenge the eavesdropping warrants that
> authorized the interception of Cochran's telephone calls, as counsel
> will not be found to be ineffective for failing to make an argument
> that has little or no chance of succeeding. Here, the People
> discovered after obtaining an eavesdropping warrant for a telephone
> purportedly used by another individual that the telephone was
> actually used by Cochran and that his conversations with [Wright]
> referenced crimes beyond the scope of the original warrant. They
> sought to amend the warrant to retroactively authorize the
> interception of conversations related to these crimes and at the same
> time notified the court that the telephone was used by Cochran.
> Although captioned as an amendment, the contents of the People's
> application met the statutory and constitutional requirements to
> establish probable cause for an eavesdropping warrant on a new

---

[8] See, e.g., Twitty v. Smith, 614 F.2d 325, 332 (2d Cir. 1979) (holding "the mention of 'effective assistance of counsel'" sufficiently presents a federal issue to the state court since it "instantly calls to mind the Sixth Amendment's guaranty of the accused's right 'to have the Assistance of Counsel for his defense'").

> telephone and new telephone number; accordingly, [Wright] did not
> establish that a challenge on this ground would have succeeded.

SCR at 5477 (internal citations omitted).

The state court's decision was reasonable and should not be disturbed. It is well established that, "[w]here an ineffective assistance of counsel claim is premised on counsel's failure to make a suppression motion, a showing of prejudice under Strickland requires that the underlying suppression claim was 'meritorious' and that 'there is a reasonable probability that the verdict would have been different absent the excludable evidence.'" Parisi v. Artus, No. 08-CV-1785, 2010 WL 4961746, at *6 (E.D.N.Y. Dec. 1, 2010) (quoting Maldonado v. Burge, 697 F. Supp. 2d 516, 525 (S.D.N.Y. 2010)) (other citations omitted).

A defense attorney cannot be deemed ineffective for failing to pursue an unmeritorious defense or application. See United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance" and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]") (citations omitted).

Although the Appellate Division's discussion of its reasons for denying Petitioner's ineffective assistance of counsel claim was brief, by also incorporating its decision in People v. Wright, 139 A.D.3d 1094, 1101 (N.Y. App. Div. 3rd Dep't 2017), its decision appears to have been premised on the conclusion that Petitioner could not satisfy the prejudice prong because there is no indication that such a motion "would have succeeded." SCR at 5477. Moreover, the Appellate Division found no error of state law in the wiretap application at issue. Wright, 139 A.D.3d at 1101. That finding is clearly not unreasonable and, in the context of a claim involving ineffective assistance of counsel, the Appellate Division determined that failure to file such a meritless motion provided no basis for ineffective assistance of counsel relief.

Counsel cannot now be deemed ineffective for failing to make an argument or objection that stood little chance of success. See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance."), cert. denied, 531 U.S. 811 (2000); Maldonado, 697 F. Supp. 2d at 530 ("Obviously, if the suppression motion was denied, the outcome of the trial could not have been different."). Accordingly, Petitioner's request for habeas relief on this ground is denied.

### 3. Voice Recordings and Voice Identification

Petitioner next asserts trial counsel's performance was constitutionally ineffective for "being constructively absent at trial and not objecting to the trial court's admission of voice recordings into trial, and presented to the jury," not challenging the identification of his voice in intercepted telephone, and/or nor offering a rebuttal voice identification expert. Pet. at 3, 5–10. Petitioner never raised such contentions in state court; therefore, the claims are unexhausted.

As Respondent correctly argues, to the extent these claims are record-based and therefore could have been raised on direct appeal, they are now procedurally defaulted. R. Mem. at 48. Petitioner provides no cause for his default or resulting prejudice. He has also failed to present any new evidence that he is "actually innocent" of the crimes for which he was convicted, and that failure to review this claim would result in a "miscarriage of justice." House, 547 U.S. at 536–39; Schlup, 513 U.S. at 327. Accordingly, inasmuch as these claims appear to be record based, there are barred from habeas review.

Moreover, the Court agrees with Respondent that if Petitioner's contentions are based on material evidence outside the record, the claim would not be defaulted, but rather would remain unexhausted because Petitioner could raise it in a post-conviction motion. R. Mem. at 48. Section 2254 "prohibits federal courts from *granting* relief to an applicant who has not exhausted the

remedies available in the courts of the State," but allows "federal courts to deny the petition, regardless of whether the applicant exhausted his state court remedies." <u>Abuzaid v. Mattox</u>, 726 F.3d 311, 321 (2d Cir. 2013) (emphasis in original, internal quotation marks omitted) (citing 28 U.S.C. § 2254(b)(1)(A), (b)(2)).

In any event, Petitioner does not show that counsel was ineffective for failing to object to the trial court's admission of voice recordings into evidence, because the objection would not have been sustained. Extensive discussions were held on the record, wherein counsel objected to the admissibility of the voice recordings and expressed she would not stipulate to the "admission" of the three composite discs containing the telephone calls to be played at trial. TR/EX at 409–16. After further discussions, outside of the presence of the jury, the prosecution conveyed to the trial court that defense counsel indicated they would "object to each and every call that we go to play on the discs, arguing that a proper foundation before we can play that call would be to establish who it is that's speaking in the call." TR/EX at 423. The trial court decided:

> THE COURT: My position is this. We will cut to the chase. I am going to admit them subject to further motion if it isn't tied up that there is a foundation for your clients. It doesn't make sense to do otherwise. The jury is going to say, "what's this about?"
>
> With that, we have already had the determination that there was a proper wire, that certain numbers were tapped, that this was in conformance with the authorization provided by the tap, these are the numbers by the Attorney General from the authorized seized material. Thus, the only question, and it may be legitimate, but subject to them establishing it is these two defendants.
>
> MS. SOBER: And with regard to the other tapes where there are people that we don't know who is speaking, there are a lot of unknowns. So I assume he is going to connect all that. But clearly that's our objection, that it can't come in until he connects. That's what I was trying to say before, I guess.

20

> THE COURT: I am going to admit it subject to excluding if he doesn't. Fair enough.
>
> MR. SACCO: So we have a standing objection, so we don't have to pop up?
>
> THE COURT: I am saying at the end of the thing if he doesn't tie it up, I will throw it out. They won't consider one word of the tapes.
>
> MS. SOBER: Okay.

TR/EX 423–26. As a final note, the prosecutor clarified, "we are in agreement we can use the composites [discs]?" TR/EX at 428. To which the Court responded, "Yes." Id.

Subsequently, after lengthy testimony from Guiry, the People offered and the Court admitted Exhibits 1, 2, and 3, the composite discs of the voice recordings, "for all purposes." TR/EX at 745. Counsel did in fact, object to their admissions, which the Court overruled stating, "For all purposes, the conditions I placed have been satisfied, they are admitted as 1, 2, and 3." TR/EX at 746.

Nor does Petitioner show that counsel was ineffective for failing to challenge the identification of Petitioner's voice. "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (citing Strickland, 466 U.S. at 690); see also United States v. Smith, 198 F.3d 377, 386 (2d Cir. 1999) ("The decision whether to call any witnesses on behalf of a defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense counsel in almost every trial.")).

Here, Petitioner fails to show that, had counsel challenged the identification of his voice in the intercepted telephone, the result at trial would have been different, because the evidence of Petitioner's identity was overwhelming, including that during a search of Petitioner's home which he shared with his girlfriend, police found the tapped cellphone on his person (TR/EX

634, 1268–69); he was identified by voice by the detective who spoke with him after arrest (TR/EX at 3455–58); and he was identified by voice and appearance by his girlfriend (SCR at 1121–23, 1138, 1140, 1147–48), a friend (TR/EX at 1203–04, 1230), and a heroin customer (TR/EX at 1045, 1047–48, 1050–65, 1067–68). Petitioner was known as "E-Murder" and in intercepted conversations with Wright, Wright addressed Petitioner as "E-Murder" (Calls 173, 210, 849, 1059) and as "Erick Cochran" (Call 15). SCR at 2002, 2026, 2045, 2506, 2541. In a call to a potential employer, petitioner identified himself by name, "Erick Cochran," and by social security number (Call 374; SCR 2092, 4455). See United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) (court "must consider the totality of the evidence before the judge or jury" in adjudicating an ineffective assistance claim).

Nor was counsel ineffective for not obtaining a "rebuttal defense expert in the field of voice recognitions[.]" Pet. at 5. "The decision whether or not to call an expert witness generally falls within the wide sphere of strategic choices for which counsel will not be second-guessed on habeas review." Savinon v. Mazucca, No. 04-CV-1589, 2005 WL 2548032, at *33 (S.D.N.Y. Oct. 12, 2005) (quoting Stapleton v. Greiner, No. 98-CV-1971, 2000 W L 1207259, at *16 (E.D.N.Y. July 10, 2000), report-recommendation adopted, No. 04-CV-1589, 2006 WL 2669331 (S.D.N.Y. Sept. 18, 2006); see Valdez v. Brown, No. 05-CV-1064, 2010 WL 1633393, at *5 (N.D.N.Y. Apr. 2, 2010) ("Because [the petitioner's] counsel likely had strategic reasons for deciding neither to object to voice identification by police nor seek expert voice identification analysis, [he] is not entitled to habeas relief."), report-recommendation adopted, No. 05-CV-1064, 2010 WL 1633422 (N.D.N.Y. Apr. 22, 2010)).

Rather than focusing on the "voice identification," counsel focused on the lack of personal knowledge of the alleged drug transactions, challenged the purported terminology of the

alleged drug transaction, highlighted the lack of physical evidence, and challenged the credibility

of the lay witnesses, all of whom were testifying pursuant to cooperation agreements. See

Valdez, 2010 WL 1633393, at *5 ("Simply because counsel made the tactical decision to focus

on the [investigator's] lack of personal knowledge and confidential informant's lack of

credibility, as opposed to the expert voice analysis, does not render counsel's performance

ineffective."); see also Trapnell v. United States, 725 F.2d 149, 155 (2d Cir. 1983) (complaints

concerning matters of trial strategy "do not form the basis for a finding of ineffective

assistance"). Under these circumstances, the decision of trial counsel not to call her own expert

"cannot be considered objectively unreasonable," because Petitioner offers no proof suggesting

that a defense expert would have been helpful or otherwise contradicted the trial testimony. See

Burkett v. Artus, No. 14-CV-110, 2016 WL 6659492, at *11 (N.D.N.Y. Nov. 10, 2016) (citing

Savinon, 2005 WL 2548032, at *33) (other citation omitted).

      "Moreover, petitioner cannot establish prejudice because he has not shown that a defense

expert would have contradicted the prosecution's evidence." Id. (citing James v. United States,

No. 00-CV-8818, 2002 WL 1023146, at *16 (S.D.N.Y. May 20, 2002) (rejecting petitioner's

claim that trial counsel was ineffective in failing to obtain expert testimony where petitioner

"provide[d] no reason to believe that an . . . expert hired by the defense would have offered any

exculpatory testimony or indeed any testimony that differed from the Government expert");

Murden v. Artuz, 253 F. Supp. 2d 376, 389 (E.D.N.Y. Sept. 7, 2001), aff'd, 60 F. App'x 344 (2d

Cir. 2003) (concluding that the petitioner failed to show prejudice based on attorney's decision

not to hire an expert where the petitioner did not "come forward with affidavits or other

admissible evidence showing that there is an expert witness who would have testified"

concerning issues that would have raised a reasonable doubt as to the petitioner's guilt).

In sum, the record does not support the conclusion that trial counsel rendered ineffective assistance by not challenging the identification of Petitioner's voice. Petitioner does not show that trial counsel acted unreasonably and that, but for her alleged deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different.

Accordingly, the foregoing ineffective assistance of counsel claims are either unexhausted, procedurally defaulted, or without merit. Petitioner's request for habeas relief on this ground is denied.

### B.  Trial Court's Admission of Prior Bad Acts Evidence

Petitioner contends that he was denied a fair trial due to the prosecution's improper use of prior "bad acts" in its direct case. Pet. at 7. Specifically, Petitioner claims that "at trial the prosecutor referred to previous convictions, and other bad acts of Petitioner, codefendants/ coconspirators. Prosecutor's indirect/direct reference to prior conviction [was] improper and caused undue prejudice." Id.[9] While the legal nature of the claim is unclear, as respondent correctly argues, if Petitioner's claim is a state claim, it is not cognizable on habeas review. If construed as a federal claim, it is procedurally defaulted and meritless. R. Mem. at 50–57.

Prior to trial, the prosecutor made what he characterized as a Molineux[10] application to present four intercepted calls from Wright to Petitioner (Calls 550, 557, 1059, and 1065). SCR at 2490–501, 2534–59; TR/EX at 10–13. The prosecutor described the conversations as Wright and

---

[9]  Respondent correctly notes the prosecution did not present any evidence of Cocrhan's or Wright's prior convictions. R. Mem. at 50.

[10]  People v. Molineux, 168 N.Y. 264 (N.Y. 1901), and People v. Ventimiglia, 52 N.Y.2d 350 (N.Y. 1981), describe the New York procedure for determining in advance of trial whether evidence of uncharged bad acts and/or crimes is admissible for the purpose of showing, e.g., (1) motive, (2) intent, (3) absence of mistake or accident, (4) common scheme or plan, or (5) identity, and for determining whether the probative value outweighs the prejudicial effect.

Petitioner talking "about who they believe to be snitches" and "what they do to snitches, that they burn them, that they intend to burn them, that they take out snitches." TR/EX at 10. The prosecutor continued:

> We believe that all of those four phone calls should be admissible under *Molineux* relating to the intent element of the attempted murder. That's precisely why we are alleging Mr. Wright had Myles Jackson shot, because they believed that Myles Jackson had become a snitch.
>
> So in these four charge phone calls they talk about what they do to snitches, and eventually they have Myles Jackson shot because Mr. Wright believed he had become a snitch. That would be a *Molineux* application under intent.

TR/EX at 10–11. Petitioner's counsel opposed the prosecutor's use of the calls. TR/EX at 11. Wright's counsel joined in the opposition. The trial court ruled it "will allow those phone calls to be played, assuming the proper foundations, as you have indicated." TR/EX at 12. At trial, the prosecution played Calls 550, 557, and 1059, but not Call 1065.

The trial court's evidentiary ruling was an exercise of discretion, grounded in state law, and is not properly reviewed by the Court in a habeas proceeding. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1999) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); Sirico v. N.Y. Att'y Gen., No. 12-CV-0358, 2015 WL 3743126, at *7 (E.D.N.Y. June 15, 2015) ("As a threshold matter, *Molineux* sets forth a state evidentiary rule, not a rule of clearly established federal law, and 'it is not the province of a federal habeas court to re-examine state court determinations of state-law questions.'" (quoting Cox v. Bradt, No. 10-CV-9175, 2012 WL 2282508, at *14 (S.D.N.Y. June 15, 2012))); Sudler v. Griffin, No. 12-CV-0367, 2013 WL 4519768, at *3 (N.D.N.Y. Aug. 26, 2013) ("A decision to admit evidence of a defendant's

uncharged crimes or other bad acts under *People v. Molineux* . . . constitutes an evidentiary ruling based on state law.").

On direct appeal, the Appellate Division addressed this claim as follows:

> Defendant next argues that he was deprived of his right to a fair trial by the People's presentation of prior bad act evidence consisting of four recorded telephone calls in which he and Wright discussed their willingness to kill certain fellow gang members who they believed to be "snitches." Defendant claims that although County Court may have properly allowed the recordings to be played at his joint trial with Wright because Wright was charged with attempted murder, they did not pertain to his own case and, instead, showed only his propensity to commit a crime (see People v Molineux, 168 NY 264, 293 [1901]). However, defendant failed to preserve this issue for our review, as he "raised no specific arguments at the [pretrial] hearing on the issue of admissibility or prejudicial effect of these [recordings]" (People v Tyrell, 82 AD3d 1352, 1356 [2011], lv denied 17 NY3d 810 [2011]).
>
> Were we to address defendant's argument, we would find it to be without merit. To the extent that this evidence pertains to defendant's case, it constitutes additional evidence of enterprise corruption because it was probative of the organizational expectation of extreme loyalty from the gang's membership and defendant's support for its method of disciplining members who disobeyed the gang's rules (see Penal Law §§ 460.10 [3]; 460.20 [1]; People v Kancharla, 23 NY3d at 304-306; People v Western Express Intl., Inc., 19 NY3d 652, 658 [2012]).

Cochran, 140 A.D.3d at 1200–01 (footnote omitted, alterations in original).[11]

In finding this claim unpreserved for appellate review, the Appellate Division plainly relied upon New York's contemporaneous objection rule, CPL § 470.05(2), which has long been

---

[11]   In a footnote, the Appellate Division further concluded, "Similarly unpreserved are defendant's additional assertions that he was prejudiced by County Court's failure to issue a limiting instruction confining the jury's consideration of the telephone recordings to the issue of Wright's intent to commit attempted murder and by the People's comments on the recordings during their closing. Defendant did not explicitly request a limiting instruction nor did he object to the relevant portion of the People's closing." Cochran, 140 A.D.3d at 1201 n.2 (internal citations omitted).

considered an "adequate and independent ground" that bars federal habeas review.[12] Because the Appellate Division's decision is based on a state procedural rule, it constitutes an independent and adequate ground that bars federal habeas relief. Harris, 489 U.S. at 265; see Velasquez, 898 F.2d at 9 ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.").

As discussed, without a showing of cause and prejudice, or a fundamental miscarriage of justice, the state court's decision to bar consideration of this claim must be followed. Petitioner has not alleged and the record does not support cause and prejudice or a fundamental miscarriage of justice. Accordingly, Petitioner's claim related to the trial court's admission and prosecution's use of prior "bad acts" are subject to an unexcused procedural default and are dismissed on that basis.

In any event, Petitioner has not demonstrated that his constitutional right to a fair trial was violated. "Federal courts may issue a writ of habeas corpus based upon a state evidentiary error only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right, and that the error was so extremely unfair that its admission violates fundamental conceptions of justice." Buchanan, 2016 WL 1049006, at *4 (quoting Sudler, 2013 WL 4519768, at *3) (other citations and internal quotation marks omitted); accord Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Dowling v. United States, 493 U.S. 342, 352

---

[12]  See Sanchez-Reyes v. Strack, No. 94-CV-1317, 1995 WL 759029, at *1 (N.D.N.Y. Dec. 15, 1995) ("Even in light of any ambiguity in the [Appellate Division's] written opinion, I can presume that the [decision] was based on independent and adequate state procedural grounds where the issue was not raised in the trial court and the procedural bar was argued by the state on appeal." (citing Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993)). Such is the case here. SCR at 5091.

(1990), <u>cert. denied</u>, 525 U.S. 840 (1998)). "For the erroneous admission of other unfairly prejudicial evidence to amount to a denial of due process, the item must have been sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." <u>Dunnigan</u>, 137 F.3d at 125 (citations and internal quotation marks omitted); <u>accord</u> <u>Collins v. Scully</u>, 755 F.2d 16, 19 (2d Cir. 1985). The Court is satisfied that the Appellate Division's decision finding the admission of the "prior bad act evidence" did not violate Petitioner's right to a fair trial, nor was it contrary to, or an unreasonable application of, Supreme Court precedent. <u>See</u> <u>Dowling</u>, 493 U.S. at 352. Accordingly, Petitioner's request for habeas relief on this ground is denied.

### C. Sufficiency of Evidence

Petitioner alleges the evidence presented at trial was insufficient to convict him. Pet. at 8 (incorporating the legal sufficiency claims presented to the Appellate Division). Respondent argues Petitioner's legal insufficiency claim, read as the same insufficiency claims he raised in the Appellate Division, is procedurally defaulted and meritless. R. Mem. at 57–69. For reasons discussed therein, the Court agrees with Respondent.

In his Appellate Brief, Petitioner challenged the sufficiency of the evidence on all counts of conviction, except Count 155, a third degree drug possession that was based on his possession of and intent to sell the 30 glassine baggies of heroin found in his apartment. SCR at 2601–03. There, in sum and substance, Petitioner argued that because the prosecution failed to recover any heroin, the prosecution did not prove the substance he sold was heroin. SCR at 2602. Specifically, Petitioner alleged that "[a] tape recording of an agreement to sell is not sufficient evidence as a matter of law to sustain a conviction. Without the drug, and without scientific analysis of that drug, ability to sell cannot be proven." <u>Id.</u> He additionally claimed that the

prosecution failed to prove his connection to the Bloods Drug Distribution Enterprise. SCR at 2604–05.

A convicted defendant seeking federal habeas review for sufficiency of evidence to support his conviction bears a heavy burden, given the considerable deference owed to a jury's verdict at both the state and federal levels. Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam); Fama, 235 F.3d at 811 (2d Cir. 2000); United States v. Brewer, 36 F.3d 266, 268 (2d Cir. 1994). A petitioner invoking this ground is entitled to relief only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979); see also Coleman, 566 U.S. at 651; Cavazos v. Smith, 565 U.S. 1, 7 (2011) (per curiam).

When making its analysis concerning sufficiency of the evidence, a court is required to "consider the evidence in the light most favorable to the prosecution and make all inferences in its favor." Fama, 235 F.3d at 811. This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993) (emphasis in original).

In response to a habeas petition, a federal court may overturn a state appellate court's finding of evidence sufficiency only if, when judged against this standard, the decision was objectively unreasonable, even though if considering the matter de novo the federal court may have reached a different result. See Coleman, 566 U.S. at 651; Garbutt v. Conway, 668 F.3d 79, 81 (2d Cir. 2012) (a legal sufficiency claim on federal habeas review is "doubly deferential"). Thus, where the state courts have denied on the merits a petitioner's legal sufficiency claim, a district court "may not grant the writ unless [it] conclude[s] that no reasonable court could have

held that any reasonable jury could have read the evidence to establish petitioner's guilt beyond a reasonable doubt." Garbutt, 668 F.3d at 82.

### 1. Drug Sale and Possession Convictions

Petitioner's drug sale and possession convictions are unexhausted and procedurally barred. In his application for leave to appeal, Petitioner plainly limited his legal sufficiency claim to count one of the indictment. SCR at 5309. He cannot file another application for leave to appeal, because he is entitled to only one such application. See Grey, 933 F.2d at 120 (citing N.Y. Court Rules § 500.10(a)).

Petitioner has not alleged or established cause sufficient to excuse his default or actual resulting prejudice, and, as discussed above, he has not alleged that the failure to consider his claim will result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750; see also Maples, 565 U.S. at 280; House, 547 U.S. at 536–39; Murray, 477 U.S. at 488–89. Accordingly, Petitioner's legal sufficiency claims related to the drug sale and possession convictions are barred from habeas review and are denied and dismissed.[13]

---

[13] In any event, this claim is meritless. The Appellate Division ruled that the evidence, when viewed in its totality, including intercepted telephone calls and text messages, the testimony of two of [Petitioner's] customers (also codefendants) and the laboratory analysis of heroin recovered from one of the customers and from [his] residence, "was legally sufficient to establish that [Petitioner] had the intent and ability to sell heroin at the time of each and every one of the sale for which he was charged[,]" and was legally sufficient to sustain Petitioner's conviction for criminal possession and attempted criminal possession in the third degree. Cochran, 140 A.D.3d at 1199–1200 & n.1. There is no categorical rule under New York law, much less Supreme Court law, that evidence of drug sale or possession cannot be legally sufficient in the absence of direct evidence in the form of recovered drugs. See R. Mem. at 61 (citing People v. Whitehead, 29 N.Y.3d 956, 958 (N.Y. 2017), People v. Samuels, 99 N.Y.2d 20, 24 (N.Y. 2002)). The Supreme Court "ha[s] never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required." Desert Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003). The Jackson standard may be satisfied "entirely by circumstantial evidence," Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996), including where the question is whether the defendant was dealing narcotics, see United

### 2. Enterprise Corruption

Petitioner's challenge to the legal sufficiency of his enterprise corruption conviction is procedurally barred by an adequate and independent state law ground. The Appellate Division determined Petitioner failed to preserve his challenge as to his enterprise conviction. Cochran, 140 A.D.3d at 1200. As discussed, the preservation rule is independent of the underlying federal question; it is firmly established and regularly followed; and it was not exorbitantly applied in Petitioner's case. See People v. Hawkins, 11 N.Y.3d 484, 492 (2008). Petitioner provides no cause for his default or resulting prejudice. He has also failed to present any new evidence that he is "actually innocent" of the crimes for which he was convicted, and that failure to review this claim would result in a "miscarriage of justice." House, 547 U.S. at 536–39; Schlup, 513 U.S. at 327. Accordingly, Petitioner's legal sufficiency claim challenging the enterprise conviction is therefore barred from habeas review and is denied and dismissed.[14]

### D.  Judicial Bias

In his Traverse, Petitioner asserts, for the first time, the trial judge was biased against him and should have recused himself. Traverse at 3–7. Nowhere in his Petition did Petitioner raise this claim.

---

States v. Sureff, 15 F.3d 225, 228 (2d Cir. 1994). Thus, the Court is also satisfied the Appellate Division's ruling was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the entire record.

[14]  In any event, the claim is meritless. When evaluating whether the elements of the offense of enterprise corruption were established as part of its weight of the evidence review, the Appellate Division explicitly referred to Petitioner's unpreserved sufficiency challenge and alternatively rejected the claim on the merits. Cochran, 140 A.D.3d at 1200. The Court is satisfied that the Appellate Division's ruling was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the entire record.

Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts provides, in part, that "[t]he petition must . . . specify all grounds for relief available to the petitioner." See Rule 2(c)(1) of the Rules Governing Section 2254 Cases in the United States District Courts. In light of this Rule, it has been recognized that a traverse is not the proper pleading in which to raise additional grounds for habeas relief. See Jones v. Artus, 615 F. Supp. 2d 77, 85 (W.D.N.Y. 2009) ("District courts have held that habeas claims raised for the first time in a reply memorandum or traverse are not properly considered.") (citations omitted); Parker v. Duncan, No. 03-CV-0759, 2007 WL 2071745, at *6 (N.D.N.Y. July 17) (noting that "it has been recognized that a traverse is not the proper pleading in which to raise additional grounds for habeas relief") (citations omitted), aff'd, 255 F. App'x 565 (2d Cir. 2007); Simpson v. United States, No. 03-CV-691, 2005 WL 3159657, at *5 (N.D.N.Y. Nov. 25, 2005) (declining to consider habeas claims "raised for the first time in [petitioner's] Traverse").

In light of the foregoing, the Court finds Petitioner did not properly raise this claim; therefore, the claim is denied.[15]

## V.    Certificate of Appealability

28 U.S.C. § 2253(c)(1) provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" § 2553(c)(1). A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right." § 2553(c)(2).

---

[15]  Petitioner's failure to exhaust this claim, as well as the one-year limitations period imposed by AEDPA, would also appear to impose significant procedural hurdles to any consideration of the merits of the claim he has raised for the first time in his Traverse.

Since Petitioner has failed to make such a showing with regard to any of his claims, the Court declines to issue a Certificate of Appealability in this matter. See Hohn v. United States, 524 U.S. 236, 239–40 (1998) (quotation omitted).

**VI.    CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the Petition (Dkt. No. 1) is **DENIED**; and it is further

**ORDERED**, that no Certificate of Appealability shall be issued with respect to any of Petitioner's claims; and it is further

**ORDERED**, that the Clerk close this case; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:       March 31, 2021
             Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge

33